# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BILLY MELVIN HOWARD,

        Defendant-Appellant.

UNPUBLISHED
April 11, 2017

No. 320695
Wayne Circuit Court
LC No. 13-009560-01-FC

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of assault with intent to commit murder, MCL 750.83; felonious assault, MCL 750.82; intentional discharge of a firearm from a motor vehicle, MCL 750.234a; intentional discharge of a firearm at a dwelling or occupied structure, MCL 750.234b; possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 16 to 30 years' imprisonment for each assault with intent to commit murder conviction; one to four years' imprisonment each for the felonious assault conviction, for the intentional discharge of a firearm from a motor vehicle conviction, and for the intentional discharge of a firearm at a dwelling or occupied structure conviction; one to five years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

We note at the outset that defendant has filed multiple appellate briefs in this case. He filed an original appellate brief and a Standard 4 brief. After obtaining a new appellate attorney, defendant was granted permission to file a supplemental appellate brief, which we will refer to as his supplemental appellate brief filed before remand. After a remand for a *Ginther*[1] hearing, defendant filed a supplemental appellate brief after remand.[2] We will first address the issues

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] See *People v Howard*, unpublished order of the Court of Appeals, entered May 28, 2015 (Docket No. 320695) (granting, *inter alia*, defendant's motion to file a supplemental brief before remand and his motion to remand the case for a *Ginther* hearing, and allowing defendant to file another supplemental appellate brief after remand).

raised in defendant's original appellate brief and Standard 4 brief before turning to the issues raised in defendant's supplemental appellate briefs filed before and after remand.

## I. DEFENDANT'S ORIGINAL APPELLATE BRIEF AND STANDARD 4 BRIEF

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

This case arises from an incident in which defendant fired gunshots out of the passenger side of a car that was driven by his brother, Germaine Howard (Germaine). Defendant first argues in his original appellate brief that defense counsel rendered ineffective assistance when he failed to call Germaine as a witness at trial. Defendant argues in his Standard 4 brief on appeal that defense counsel rendered ineffective assistance when he failed to move for a directed verdict with regard to the assault with intent to commit murder charges. We disagree.

"[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not move for a new trial or an evidentiary hearing on this issue in the trial court. Therefore the issue in unpreserved. See *id*.[3]

This Court reviews an unpreserved issue of ineffective assistance of counsel for mistakes apparent on the record. *Heft*, 299 Mich App at 80. An ineffective assistance of counsel claim involves questions of fact and questions of constitutional law. *Id*. This Court reviews the trial court's findings of fact for clear error and reviews de novo the legal issue. *Id*.

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). There is a strong presumption that defense counsel's conduct constituted sound trial strategy. *Id*. at 52. The failure to call a witness at trial is presumed to be a matter of trial strategy. *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009). Failure to call a witness constitutes ineffective assistance of counsel only if the failure to call the witness " 'deprives the defendant of a substantial defense.' " *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation omitted). " 'A substantial defense is one that might have made a difference in the outcome of the trial.' " *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted). "Similarly, '[t]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome.' " *Russell*, 297 Mich App at 716 (citation omitted; alteration in original). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defense counsel did not render ineffective assistance when he failed to call Germaine as a witness at trial.

---

[3] As discussed later, this issue is related to other issues that were the subject of the *Ginther* hearing on remand. We will consider the full record that now exists in addressing this issue.

> A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes hypotheses consistent with the view that his trial lawyer represented him adequately. [*People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (citation and quotation marks omitted.]

Defendant attaches to his original appellate brief Germaine's affidavit,[4] in which Germaine states that he (Germaine) is innocent. Germaine states that the person who fired gunshots out of his car acted in self-defense, but Germaine did not know that the person had a gun or would shoot the gun. Germaine states that he pleaded guilty because his attorney informed him that if he accepted a guilty plea, he would be able to testify at defendant's trial that defendant was not at the scene of the incident and did not shoot anyone. According to Germaine, he was not given the opportunity to testify at defendant's trial. Germaine testified substantially to the same effect at the *Ginther* hearing on remand.

Defendant fails to overcome the strong presumption that defense counsel's failure to call Germaine as a witness constituted sound trial strategy. Germaine states in his affidavit that he would have testified that defendant was not at the scene of the incident and did not shoot anyone. However, Germaine admits in his affidavit that he, personally, *was* at the scene of the incident during the incident, even though defendant was not. Thus, defense counsel may have decided that Germaine's testimony would have tied defendant to the scene of the incident because he is defendant's brother and that a brother may lie for his brother to protect him. Germaine further states that he was "jumped" in a convenience store two days before the incident and that the people who attacked him had guns and were looking for him. This connects defendant with the incident since Jermaine King[5] testified that he was in a fight with the driver of the car, a man he knew as "Maine," at a party store three days before the incident. In addition, Germaine's testimony that he was in a fight a few days before the incident bolsters Jermaine King's credibility since Germaine's version of events is consistent with Jermaine King's version of events. Furthermore, Germaine does not identify the actual shooter in his affidavit, and his potential failure to identify the real shooter at trial may have led the jury to believe that defendant was the shooter. Thus, defendant fails to overcome the strong presumption that defense counsel's conduct constituted sound trial strategy since defense counsel may have decided not to call Germaine as a witness because his testimony may have linked defendant to the incident. See *Russell*, 297 Mich App at 716; *Seals*, 285 Mich App at 21. And, as discussed later, defense counsel testified at the *Ginther* hearing that the reason he did not call Germaine to testify at trial was because Germaine lacked credibility given his refusal to identify the shooter.

---

[4] This Court granted defendant's motion to enlarge the record to include Germaine's affidavit. See *People v Howard*, unpublished order of the Court of Appeals, entered May 28, 2015 (Docket No. 320695).

[5] We will refer to Jermaine King by both his first and last name to avoid confusion with Germaine Howard and alibi witness Earl King.

Furthermore, defendant fails to show a reasonable probability that, but for defense counsel's conduct in failing to call Germaine as a witness, the result of the trial would have been different because there is additional evidence linking defendant to the crime. While it is possible that the jury would have believed Germaine's testimony that defendant was not present at the scene of the incident, Marquisha Jackson (Marquisha) and Jermaine King both identified defendant as the man who was sitting in the passenger seat of the car. Thus, defendant was clearly identified at trial as the shooter. Additionally, defendant called two other alibi witnesses at trial. The jury found defendant guilty of the crimes in spite of his alibi defense. Defendant fails to show how the addition of Germaine as an alibi witness would have resulted in a different outcome in this case, especially considering that Germaine admits to being at the scene of the incident and to getting into a fight with Jermaine King before the incident. This testimony links defendant to the incident and bolsters the credibility of Jermaine King and Marquisha. Therefore, there is not a reasonable probability that, but for defense counsel's failure to call Germaine as a witness at trial, the result of the trial would have been different. See *Trakhtenberg*, 493 Mich at 51.

In addition, defense counsel was not ineffective for failing to move for a directed verdict with regard to all of the assault with intent to commit murder charges. Defense counsel moved for a directed verdict on the charges of assault with intent to commit murder as to Marquisha, assault with intent to do great bodily harm as to Marquisha, and felonious assault as to Marquisha. The trial court granted the motion for a directed verdict with regard to the assault with intent to commit murder and the assault with intent to do great bodily harm charges. However, defense counsel did not move for a directed verdict with regard to the other charges. As discussed in further detail below, there was sufficient evidence presented at trial for the jury to convict defendant of assault with intent to commit murder with regard to Jermaine King, Tamika Williams, and Aubrey Lollie. Therefore, defense counsel did not render ineffective assistance when he failed to move for a directed verdict with regard to all of the assault with intent to commit murder charges. See *Ericksen*, 288 Mich App at 201. Defendant points out that defense counsel filed a motion to quash the information because there was insufficient evidence presented at the preliminary examination to bind over defendant on the charges. However, a defendant moves for a directed verdict in the trial court based on the testimony presented at trial. See MCR 6.419(A) (outlining the process for bringing a motion for a directed verdict of acquittal and noting that the defense must bring the motion after the prosecution has rested its case-in-chief, or after the close of all of the evidence in the case); *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011) (explaining the standard of review for a denial of a motion for a directed verdict). Therefore, defendant's argument that defense counsel should have moved for a directed verdict based on the testimony presented at the preliminary examination fails.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant next argues in his Standard 4 brief on appeal that there was insufficient evidence to support his convictions. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). This Court reviews the evidence "in the light most favorable to the prosecution, to determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* In

addition, "[t]his Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *Id.*

Defendant's arguments concerning the sufficiency of the evidence are premised upon identification. Defendant first argues that the fact that he was at the scene of the crime was insufficient to establish his guilt. "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999).

Jermaine King and Marquisha testified that they saw defendant sitting in the passenger seat of the Buick Roadmaster when the car drove onto Durand, the street where the incident occurred. Marquisha testified that Germaine drove by in the car once by himself, then a few minutes later, drove down Durand with defendant in the passenger seat. The car stopped a few feet away from Marquisha. Defendant was approximately 6 feet away from Marquisha. Jermaine King heard defendant yell, " 'What's up?' " Defendant was approximately 12 to 15 feet away from Jermaine King. Marquisha stared at defendant for a couple of seconds. After a short pause, defendant pulled out a black gun from a black holster with white writing on it. Defendant pointed the gun toward the crowd of people in front of Marquisha, which included Jermaine King. According to Jermaine King, defendant pointed the gun at him. Defendant fired one or two gunshots before the car drove away. This evidence established that defendant was the shooter during the incident, rather than merely present at the scene of the incident. See *Norris*, 236 Mich App at 419-420.

Defendant also argues that he was implicated in the crime only because of Marquisha's initial description of the shooter. Defendant argues that Marquisha altered her original description of the shooter once she saw a photograph of defendant. The prosecution must prove the identity of the defendant as the perpetrator of an offense. See *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). "[P]ositive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The issue of the credibility of identification of a defendant is a question for the trier of fact. *Id.*

Both Jermaine King and Marquisha identified defendant as the man who was in the passenger seat of the car. The incident occurred in broad daylight. Marquisha had seen defendant with Germaine at a party store in the neighborhood several times before the incident. Marquisha also identified defendant in a photographic lineup sometime after the incident. Thus, Marquisha's initial statement to the police was not the only identification of defendant as the shooter. Marquisha told the police that the shooter was a black male who was bald, shorter than Germaine, and was wearing a bright-colored shirt. Marquisha explained at trial that "bald" to her means that the person has a short haircut. Detroit Police Officer Andrew Dattolo found a photograph of defendant on Facebook, which was uploaded to Facebook on the day of the incident. Defendant posted a statement on Facebook in connection with the photograph, in which he said that "he had to get rid of his 'fro." Several people wrote comments corresponding with the photograph, which described the fact that defendant had gotten "a fresh haircut." Contrary to defendant's assertion, there is no indication that Marquisha's description changed when she saw the Facebook photograph. Instead, Marquisha clarified at trial that she refers to

someone with a close haircut as being "bald." To the extent that defendant argues that Marquisha's identification of him as the shooter was not credible, the credibility issue was a question for the trier of fact. See *Davis*, 241 Mich App at 700.

## C. TRIAL JUDGE BIAS

Defendant next argues in his Standard 4 brief that he is entitled to resentencing by a different trial judge because the trial judge improperly injected personal bias into the sentencing proceeding. We disagree.

A defendant must raise the issue of judicial bias in the trial court in order to preserve it for appellate review. See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant did not raise the issue in the trial court. Therefore, it is unpreserved. See *id*.

This Court reviews an unpreserved claim of judicial bias for plain error affecting the defendant's substantial rights. See *Jackson*, 292 Mich App at 597. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). With regard to the last requirement, a defendant must show prejudice, meaning that the error affected the outcome in the trial court. *Id*. In addition, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; second alteration in original).

MCR 2.003(C)(1)(a) provides that disqualification of a trial judge is warranted if "[t]he judge is biased or prejudiced for or against a party or attorney." In order to show that a judge is personally biased or prejudiced against a defendant, the defendant must show actual bias. *Cain v Dep't of Corrections*, 451 Mich 470, 495; 548 NW2d 210 (1996). There is "a heavy presumption of judicial impartiality." *Id*. at 497. The phrase "personal bias" means that "the challenged bias must have its origin in events or sources of information gleaned outside the judicial proceeding." *Id*. at 495-496. An unfavorable ruling of a trial judge is not a basis for judicial disqualification " 'unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible.' " *Jackson*, 292 Mich App at 598 (citation omitted). In addition, a trial judge's disapproving or hostile remarks do not ordinarily give rise to a finding of bias. *Id*. In *People v Antoine*, 194 Mich App 189, 191; 486 NW2d 92 (1992), this Court clarified:

> Sentencing is the time for comments against felonious, antisocial behavior recounted and unraveled before the eyes of the sentencer. At that critical stage of the proceeding when penalty is levied, the law vindicated, and the grievance of society and the victim redressed, the language of punishment need not be tepid.

At sentencing, the trial judge made several remarks stating that the offense was senseless and that defendant would be known for making one mistake, warning defendant not to take anything for granted, noting that defense counsel did what he could during trial, and alluding to the fact that defendant should have pleaded guilty like his brother did. There is no indication that

-6-

the trial judge had a personal bias or prejudice against defendant; defendant fails to show that the trial judge was biased against him because of events or sources of information from outside of the judicial proceeding. See *Cain*, 451 Mich at 495-496. Instead, the remarks at issue only concerned the trial court proceedings as well as the trial judge's personal experiences. See *id*. The trial judge did not need to use tepid language in rendering sentence, and her disapproving remarks did not give rise to bias. See *Jackson*, 292 Mich App at 598; *Antoine*, 194 Mich App at 191. Because defendant fails to show that the trial judge was biased at sentencing, defendant is not entitled to resentencing.

## II. DEFENDANT'S SUPPLEMENTAL APPELLATE BRIEFS

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

In his supplemental appellate briefs, defendant presents numerous additional claims that he was denied the effective assistance of counsel. First, defendant contends in both of his supplemental appellate briefs that his trial counsel, Patrick Nyenhuis, had a conflict of interest that adversely affected his performance. We disagree.

"[I]n order to demonstrate that a conflict of interest has violated his Sixth Amendment rights, a defendant 'must establish that an actual conflict of interest adversely affected his lawyer's performance.' " *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998), quoting *Cuyler v Sullivan*, 446 US 335, 350; 100 S Ct 1708; 64 L Ed 2d 333 (1980).

> In *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994), this Court adopted the ineffective assistance of counsel standard articulated by *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prove a claim of ineffective assistance of counsel under *Pickens* and *Strickland*, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense so as to deny defendant a fair trial. *Strickland*, 466 US at 688-689. In dicta however, *Strickland* cited *Cuyler*'s rule for cases involving ineffective assistance of counsel claims premised on an actual conflict of interest. *Id*. at 692. *Cuyler* calls for a heightened standard in conflict of interest claims. In circumstances involving a conflict of interest, *Cuyler* stated that "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Strickland*, 466 US at 692. This heightened standard is not a rule of prejudice per se; rather, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Id*., quoting *Cuyler*, 446 US at 348-350. [*Smith*, 456 Mich at 556-557.]

Our Supreme Court in *Smith* adopted "the reasoned approach of *Cuyler*[.]" *Smith*, 456 Mich at 558. The breach of an attorney's ethical duty does not necessarily establish a violation of the defendant's Sixth Amendment right to the assistance of counsel. *Mickens v Taylor*, 535 US 162, 176; 122 S Ct 1237; 152 L Ed 2d 291 (2002), citing *Nix v Whiteside*, 475 US 157, 165; 106 S Ct 988; 89 L Ed 2d 123 (1986). Further, the adverse effect on defense counsel's representation

must be actual rather than speculative. See *People v Fowlkes*, 130 Mich App 828, 836; 345 NW2d 629 (1983).

Defendant contends that he was denied his right to the effective assistance of counsel free from a conflict of interest because his trial attorney, Nyenhuis, also represented defendant's brother and codefendant, Germaine, at certain points of this case. He also argues that even after Germaine's representation was assumed by another attorney, i.e., Otis Culpepper, defendant and Germaine continued to be represented by the same law offices because Nyenhuis and Culpepper were associates from the same office. Defendant's argument lacks merit.

At the *Ginther* hearing, there was testimony establishing that Nyenhuis represented Germaine in an unrelated misdemeanor traffic ticket case in Oakland County; according to Germaine, Nyenhuis also represented Germaine in an unrelated domestic violence case in Macomb County, although Nyenhuis denied that he represented Germaine in that case. Nyenhuis was still representing Germaine in the Oakland County traffic ticket case while representing defendant in the present case. In addition, Nyenhuis represented Germaine as well as defendant in the initial stages of this case. Nyenhuis did not feel that he had divided loyalties during his dual representation of defendant and Germaine. Nyenhuis did not think that his brief representation of Germaine interfered with his representation of defendant.

The timeline of Nyenhuis's representation of defendant and Germaine in this case was as follows. Nyenhuis first appeared for defendant in late September of 2013. Germaine was arrested in this case on October 9, 2013. Nyenhuis represented Germaine at the arraignment on the warrant, which was held on October 9, 2013, and at a hearing on October 29, 2013, at which Germaine waived his right to a preliminary examination. On November 19, 2013, Culpepper assumed Germaine's representation. At a November 21, 2013 bond hearing, attorney Robert Kinney stood in for Culpepper on behalf of Germaine. At a January 13, 2014 final conference, Culpepper arrived late, and Nyenhuis stood in for Culpepper and briefly represented both defendant and Germaine until Culpepper arrived in the courtroom. Kinney and Nyenhuis each rented office space from Culpepper, and Kinney as well as Nyenhuis sometimes stood in for Culpepper in court. Nyenhuis did not discuss trial strategy with Culpepper, and they did not share fees. Nyenhuis has always been a sole practitioner. At the January 13, 2014 final conference, Nyenhuis, on behalf of defendant and Germaine, stated that there was no objection to the prosecutor's request to consolidate the cases against defendant and Germaine. Culpepper appeared in the courtroom a short time later. On January 15, 2014, Culpepper represented Germaine at a plea hearing at which Germaine pleaded guilty to assault with intent to commit murder and felony-firearm. Culpepper also represented Germaine at a February 10, 2014 sentencing hearing. Defendant, represented by Nyenhuis, was tried by jury from January 23, 2014, to January 30, 2014.

The fact that Nyenhuis represented both defendant and Germaine in the early stages of this case does not by itself establish that defendant was deprived of the effective assistance of counsel. "[M]ultiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest." *Cuyler*, 446 US at 348. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id*. at 350. The mere *possibility* of a conflict fails to

establish a Sixth Amendment violation; rather, a defendant must show "that an actual conflict of interest adversely affected his lawyer's performance." *Id*.; see also *Smith*, 456 Mich at 557.

Defendant has failed to establish that Nyenhuis actively represented conflicting interests by virtue of his brief dual representation of defendant and Germaine. Nyenhuis represented Germaine only in the early stages of this case, including at the arraignment on the warrant and at the hearing at which the preliminary examination was waived. Culpepper assumed the representation of Germaine on November 19, 2013, well before Germaine's plea hearing and defendant's trial, both of which occurred in January 2014. Although Nyenhuis rented office space from Culpepper, they were not partners and did not share fees or discuss trial strategy. The fact that Nyenhuis briefly stood in for Culpepper and represented Germaine and defendant at the January 13, 2014 final conference until Culpepper arrived in the courtroom does not establish a conflict of interest. The only substantive action taken by Nyenhuis before Culpepper arrived in the courtroom was to express a lack of objection to the prosecutor's motion to consolidate the cases; defendant identifies no ground on which Nyenhuis could have objected to the motion to consolidate or any way in which the interests of defendant and Germaine differed with respect to whether the cases should be consolidated. Also notable is that defendant and Germaine were not ultimately tried together; Germaine pleaded guilty, after which defendant proceeded to a jury trial. See *Cuyler*, 446 US at 347 ("The provision of separate trials for [the respondent] and his codefendants significantly reduced the potential for a divergence in their interests.").

Further, defendant has failed to establish that an actual conflict of interest adversely affected Nyenhuis's performance. Defendant asserts that the purported conflict of interest caused Nyenhuis not to call Germaine as a witness at defendant's trial. But the record does not support such a conclusion. At the *Ginther* hearing, Nyenhuis testified that the reason he did not call Germaine to testify at trial was because Germaine's story was not credible:

> The story wasn't credible, and I thought it would be perceived as one brother lying to protect the other brother. And I thought that's what the prosecution would paraphrase it as. And I thought the alibi witnesses were sufficient to show that [defendant] was – [defendant] was not there.

Nyenhuis concluded that Germaine would not have been a credible witness because Germaine would not identify the purported real shooter. Nyenhuis did not believe that Germaine's testimony would help the defense on the key issue of identification of the shooter. Nyenhuis further explained that he and defendant "both agreed that Germaine would not testify. I discussed everything of importance with [defendant]." Nyenhuis's testimony regarding his reason for declining to call Germaine at trial is buttressed by Germaine's own testimony at the *Ginther* hearing. Germaine acknowledged telling Nyenhuis that he wanted to testify at trial to exonerate defendant but that he did not want to identify who the shooter actually was.[6]

_____

[6] Germaine later claimed at the *Ginther* hearing that, if called to testify at trial, he would have identified the shooter by name. In an affidavit attached to defendant's motion for reconsideration after the *Ginther* hearing, Germaine finally identified by name the person who was supposedly the real shooter. The parties devote considerable argument in their supplemental

Decisions about whether to call witnesses are presumed to be matters of trial strategy, which this Court will not second-guess. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). The record establishes, then, that Nyenhuis's declination to call Germaine as a witness at trial was based on a strategic assessment that Germaine lacked credibility and was not an adverse effect of a purported conflict of interest.

Defendant also claims that the alleged conflict of interest caused Nyenhuis to: refrain from engaging in plea negotiations that would have called for defendant to testify against Germaine; refrain from calling character witnesses who would have shed a good light on defendant but a negative light on Germaine; refrain from pointing to Germaine as the triggerman at defendant's trial; and refrain from calling defendant as a witness at his own trial out of fear that he would reveal the identity of the shooter contrary to Germaine's preference to conceal the shooter's identity. None of these assertions have any support in the record. There is no evidence that a conflict of interest existed, let alone that it caused Nyenhuis to refrain from taking any of these actions. Further, there is no indication that defendant was interested in a plea agreement. In fact, the record reflects that the prosecutor made a plea offer and that defendant wanted to go to trial rather than accept the plea offer. Nor is there any support in the record for the assertion that defendant wanted to testify but was not called by Nyenhuis due to Germaine's preference to conceal the shooter's identity. At trial, outside the presence of the jury, defendant stated that he had decided of his own free will not to testify and that it was his choice not to do so because he did not think it was necessary. Defendant identifies no basis in the record to conclude that he would have pointed to Germaine as the shooter but for Nyenhuis's brief representation of Germaine. Overall, then, defendant has failed to establish that an actual conflict of interest adversely affected Nyenhuis's representation.

Defendant next argues in both of his supplemental appellate briefs that Nyenhuis was ineffective because he failed to investigate the prosecutor's case by interviewing the prosecution witnesses before selecting a defense strategy. Defendant also suggests that he was constructively denied counsel and that prejudice should therefore be presumed because Nyenhuis's lack of preparation rendered him unable to subject the prosecutor's case to meaningful adversarial testing. We disagree.

"When asserting ineffective assistance of counsel premised on counsel's unpreparedness, a defendant must demonstrate prejudice resulting from the lack of preparation. Lack of experience, standing alone, does not establish ineffective assistance." *People v Bosca*, 310 Mich App 1, 37; 871 NW2d 307 (2015), held in abeyance 872 NW2d 492 (2015) (citation omitted). Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *Trakhtenberg*, 493 Mich at 52. Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks omitted). The failure

_____

appellate briefs to whether Germaine was willing to identify the shooter at the *Ginther* hearing itself. All of this is entirely beside the point because it is an assessment of Nyenhuis's decisions and actions *before and during trial* that is required. Germaine admitted telling Nyenhuis that he did not want to identify the shooter; the record supports the conclusion that Nyenhuis's declination to call Germaine was based on his lack of credibility rather than a conflict of interest.

-10-

to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *Russell*, 297 Mich App at 716.

Defendant contends that Nyenhuis's failure to interview civilian prosecution witnesses rendered him insufficiently prepared for trial. At the *Ginther* hearing, Nyenhuis acknowledged that he did not interview the civilian prosecution witnesses before trial. However, the failure to interview witnesses does not by itself establish inadequate preparation. *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990). "It must be shown that the failure resulted in counsel's ignorance of valuable evidence which would have substantially benefited the accused." *Id*. Defendant fails to identify valuable evidence or information that Nyenhuis would have discovered if he had interviewed the civilian prosecution witnesses before trial. Although Nyenhuis did not interview the civilian prosecution witnesses, he did conduct an investigation. Nyenhuis interviewed Germaine multiple times regarding his version of the facts. Nyenhuis attempted to talk to Marquisha after the preliminary examination, but she shook her head indicating that she did not want to talk to him. Nyenhuis conducted a search of witnesses' criminal records. He investigated why Jermaine King was in jail by looking it up on a computer program and conducting a jail inmate search. Nyenhuis indicated that he also conducted research for information regarding the witnesses on Facebook. Nyenhuis read the witnesses' statements obtained through discovery and conducted the preliminary examination. He consulted other lawyers regarding strategy. He talked to the two alibi witnesses before trial. Nyenhuis concluded that an alibi defense, along with the argument that the prosecution witnesses had misidentified or were framing defendant, was the strongest defense available. Overall, then, the record refutes defendant's contention that Nyenhuis failed to conduct an adequate investigation such that confidence in the outcome of the trial has been undermined.

Defendant's argument that he was constructively denied counsel due to Nyenhuis's lack of preparation is also unavailing. This argument is premised on defendant's view that Nyenhuis conducted no investigation and thus could not have formulated a reasonably informed defense strategy. This premise is factually unsupported for the reasons discussed above.

More generally, defendant's suggestion that Nyenhuis failed to subject the prosecutor's case to meaningful adversarial testing is devoid of merit. As our Supreme Court explained in *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007):

> Most claims of ineffective assistance of counsel are analyzed under the test developed in *Strickland, supra*. Under this test, counsel is presumed effective, and the defendant has the burden to show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error. *Strickland, supra* at 687, 690, 694. But in [*United States v Cronic*, 466 US 648, 659-662; 104 S Ct 2039; 80 L Ed 2d 657 (1984)], the United States Supreme Court identified three rare situations in which the attorney's performance is so deficient that prejudice is presumed. One of these situations involves the complete denial of counsel at a "critical stage" of the proceedings.

"The other two situations in which prejudice is presumed are as follows: (1) 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing'; and (2) where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Frazier*, 478 Mich at 243 n 10, citing *Cronic*, 466 US at 659-660. With respect to a defense counsel's alleged failure to subject the prosecutor's case to meaningful adversarial testing, "[t]he *Cronic* test applies when the attorney's failure is *complete*, while the *Strickland* test applies when counsel failed at specific points of the proceeding." *Frazier*, 478 Mich at 244, citing *Bell v Cone*, 535 US 685, 697; 122 S Ct 1843; 152 L Ed 2d 914 (2002). "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind." *Bell*, 535 US at 697. See also *Florida v Nixon*, 543 US 175, 189; 125 S Ct 551; 160 L Ed 2d 565 (2004) (noting that the *Cronic* presumption of prejudice is "reserved for situations in which counsel has *entirely* failed to function as the client's advocate.") (emphasis added).

Nyenhuis did not fail to subject the prosecutor's case to meaningful adversarial testing. As Nyenhuis explained at the *Ginther* hearing, he took numerous actions on defendant's behalf, including: filing a motion to quash on the ground that there was no evidence of an intent to kill; filing a notice of an alibi defense; successfully moving to exclude a photographic identification of defendant; cross-examining the prosecution witnesses at trial in an attempt to undermine their direct examination testimony; moving to admit Marsha Dae Jackson's (Marsha) statement in order to impeach Marquisha's testimony; presenting the testimony of two alibi witnesses; successfully seeking a directed verdict regarding two of the counts against defendant (one count of assault with intent to commit murder and one count of assault with intent to do great bodily harm, both with respect to Marquisha as the victim); and requesting a curative instruction regarding a police officer's testimony allegedly addressing the credibility of alibi witnesses. Nyenhuis opined that he did more than a fair and adequate job representing defendant. We conclude that Nyenhuis did not fail to subject the prosecutor's case to meaningful adversarial testing, and defendant is therefore not entitled to the presumption of prejudice under *Cronic*.

Defendant next argues in both of his supplemental appellate briefs that the failure to interview Marsha and to call her to testify at trial comprised ineffective assistance of counsel. Defendant contends that Marsha would have been a valuable impeachment witness against Marquisha and Jermaine King because Marquisha made threats against Marsha in an attempt to get her to present false testimony in an unrelated criminal case against Jermaine King. Defendant asserts that Marsha could also have offered eyewitness testimony concerning the facts of the present case. Defendant's argument is unavailing.

At trial, Nyenhuis asked Marquisha on cross-examination if she had ever asked anyone to lie to the police or threatened anyone to make them lie to the police, and Marquisha denied having done so. After a bench conference held off the record, the following exchange occurred:

> *THE COURT*: Okay.
>
> Did you – did- ma'am, did you – have you ever told anybody to lie to the police?
>
> *THE WITNESS*: No.

*THE COURT*: Okay.

Then it would be impeachment. She's not saying she can't recall, she's just saying she never did.

*MR. NYENHUIS*: Right.

*THE COURT*: So, the proper thing to do would be to impeach her, because her recollection, obviously, cannot be recorded – I mean, refreshed.

Nyenhuis then indicated that he had no further questions for Marquisha. On the next day of trial, Nyenhuis stated outside the presence of the jury that he wished to recall Marquisha to cross-examine her concerning a July 10, 2013 police log report reflecting a claim by Marsha that Marquisha had threatened Marsha in an attempt to make her lie in an unrelated criminal case against Jermaine King. The trial court noted that Marquisha had denied making a threatening statement. The following exchange then occurred:

*MR. NYENHUIS*: Well, I still want her to see it. Then I was going to ask if she remembered it, now.

*THE COURT*: But if she's saying: "I don't - " "I did not say that," then you're talking about impeachment by extrinsic evidence, which is, i.e., the statement, is that correct?

*MR. NYENHUIS*: Yes.

*THE COURT*: And at this point, I believe it's collateral, and I'm not going to allow it. However, I will allow you to call her sister.

*MR. NYENHUIS*: Right.

*THE COURT*: Is she available to you?

*MR. NYENHUIS*: Not to me, at this time, your Honor.

*THE COURT*: All right.

Well, your objection is noted for the record. And I'm going to deny it, at this point.

At the *Ginther* hearing, Marsha testified. She confirmed that she made the report to the police regarding Marquisha's threat. She further testified that the police report was accurate and that she had signed an affidavit to the same effect as the police report. Marquisha made this threat approximately 1½ months before the crimes in the present case were committed in August 2013. Marsha testified that Marquisha's threat had nothing to do with the crimes in this case and that Marquisha never told Marsha to lie about this case. When questioned at the *Ginther* hearing about whether testimony from Marsha would have been helpful to the defense at trial, Nyenhuis

stated that "I believe it could have went [sic] either way." He further explained, "I mean if she could have credibly testified, it might have helped, it might not have."

Defendant argues that Nyenhuis should have called Marsha as a witness at trial to impeach Marquisha's credibility. But Nyenhuis explained to the trial court that Marsha was unavailable at the time of trial. There is nothing in the record to establish that she could have been located and produced. Contrary to defendant's claim, the trial court did not offer to grant a continuance until Marsha could be produced. Further, defendant has not shown that Marsha's testimony in this case about Marquisha's threat in an unrelated case more than a month before the crimes in this case were committed would have been reasonably likely to produce a different outcome in this case. Marquisha's threat against Marsha was to protect Marquisha's husband, Jermaine King concerning the prosecution of him for a crime unrelated to the matter at hand. Her motivation to protect her husband in another case would not provide a reason for Marquisha to falsely accuse defendant in this case or to urge other witnesses to do so. There is no evidence that Marquisha had a motive to falsely accuse defendant. Defendant suggests that Marsha's testimony would also have impeached Jermaine King's credibility, but there is no evidence that he assisted or encouraged Marquisha's alleged threat against Marsha.

Nor could Marsha have provided eyewitness or alibi testimony in this case that was reasonably likely to produce a different outcome. At the *Ginther* hearing, Marsha testified that she had never seen defendant before the *Ginther* hearing and that she did not know where defendant was on the date of the shooting. Marsha was not present on Durand Street at the time of the shooting; instead, she was at her house on Parker Street. She saw Germaine driving in a car by himself on Parker Street three times on the date of the shooting. Marsha testified at the *Ginther* hearing that Germaine was alone in his vehicle when she saw him on Parker Street and that she saw his car go south on Parker Street, she heard a shot, then his car backed up and she heard a few more shots. She did not see any shots and was unsure whether the shots came from the car or the house. Nyenhuis had already spoken to Germaine several times and Germaine ultimately pleaded guilty concerning the incident. Nyenhuis was well aware, based on Germaine's own statements, that a second person was in the car during the shooting. Thus, not only was Marsha's testimony not reasonably likely to have produced a different outcome at trial, counsel made a strategic, and perhaps ethical, decision not to call as a witness someone who's testimony directly conflicted with that of the co-defendant's admitted statement to being present with another person at the scene and shots being fired from the car. Accordingly, we conclude that the failure to call Marsha at trial did not deprive defendant of a substantial defense and thus did not constitute ineffective assistance of counsel. *Russell*, 297 Mich App at 716; *Chapo*, 283 Mich App at 371.

Next, defendant argues in his supplemental appellate brief filed before remand that he was deprived of the effective assistance of counsel when Nyenhuis failed to object and request a cautionary instruction concerning testimony by Dattolo, the officer-in-charge. Defendant claims that Dattolo's testimony indicated his belief in defendant's guilt. We disagree.

"[A] witness cannot express an opinion on the defendant's guilt or innocence of the charged offense[.]" *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013), quoting *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985); see also *Heft*, 299 Mich App at 81 ("A witness may not opine about the defendant's guilt or innocence in a criminal case.").

The issue of a defendant's guilt or innocence is a question for the jury to resolve. *People v Suchy*, 143 Mich App 136, 149; 371 NW2d 502 (1985).

Dattolo did not express an opinion concerning defendant's guilt or innocence. The challenged testimony was in response to a preliminary question about how Dattolo came to be an officer-in-charge, and Dattolo was describing his responsibilities as the officer-in-charge. Dattolo was merely explaining in general that his duties include collecting evidence and presenting it to the prosecutor, and that the evidence needed to support the case. Dattolo's language may have been somewhat imprecise in stating that he – as opposed to the prosecutor – has to prove a case beyond a reasonable doubt, but this language did not amount to an expression of an opinion that defendant was guilty. Dattolo did not convey anything improper but merely informed the jury of the process by which the police collect evidence to present to the prosecutor for use in the case. An objection would therefore have been meritless, and "[d]efense counsel is not required to make meritless objections." *Heft*, 299 Mich App at 83.

Further, even if Dattolo's testimony was somewhat improper due to the lack of precision in his language, any prejudice was alleviated by the trial court's final instructions to the jury. Although no cautionary instruction was requested, the jurors were nonetheless instructed before deliberation that it was their role alone to decide the facts of the case, including whether they believed the testimony of the witnesses, and that the testimony of police officers should be evaluated by the same standard used to evaluate the testimony of any other witness. The jurors were thus adequately apprised that it was their role alone – and not that of the officer-in-charge – to decide the facts of the case. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Defendant has thus failed to demonstrate a reasonable probability of a different outcome but for the failure to object or request a cautionary instruction.

## B. JUDICIAL IMPARTIALITY

Defendant argues in his supplemental appellate brief filed before remand that he was denied a fair and impartial trial on the basis of judicial misconduct at trial. We disagree.

To preserve an argument that the trial court engaged in judicial misconduct, the defendant must object to the trial court's behavior on that basis in the trial court. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Because defendant did not object in the trial court on the ground of judicial misconduct, the issue is unpreserved. "The question whether judicial misconduct denied [a] defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.[7]

In *Stevens*, 498 Mich at 164, our Supreme Court explained:

_____

[7] But when the issue of judicial misconduct is preserved and the veil of judicial impartiality was pierced, a structural error requiring automatic reversal exists. See *Stevens*, 498 Mich at 178-180.

A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. When the issue is preserved and a reviewing court determines that the trial judge's conduct pierced the veil of judicial impartiality, the court may not apply harmless-error review. Rather, the judgment must be reversed and the case remanded for a new trial.

In determining whether a judge's conduct pierced the veil of judicial impartiality and denied the defendant a fair trial, a fact-specific analysis is required. *Id*. at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. "[A] reviewing court should consider the nature or type of judicial conduct itself. Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173.

Defendant argues that the trial court pierced the veil of judicial impartiality by noting for the record when two eyewitnesses, Jermaine King and Marquisha, each identified defendant in the courtroom. Defendant suggests that the trial court engaged in misconduct by endorsing or vouching for the eyewitnesses' in-court identifications of defendant. We disagree. The trial court merely noted for the record that the eyewitnesses had identified defendant in the courtroom. Jermaine King and Marquisha each pointed to a person in the courtroom and described the person's clothing when identifying the front seat passenger of the car from which the gunshots were fired. The trial court simply stated that the record shall reflect that the eyewitnesses were identifying defendant in the courtroom. The trial court did not tell the jurors anything that they could not see for themselves. Defendant fails to provide any basis in the record to conclude that defendant was not the person to whom the eyewitnesses were pointing and whose clothes they were describing. Hence, the trial court did not engage in any inappropriate conduct. There is no indication that the court's tone and demeanor were improper. The court merely stated, "It will so reflect," in response to the prosecutor's request for the record to reflect that the eyewitnesses were describing defendant's clothes or pointing to defendant. The scope of the court's comments was limited and did not exhibit partiality. The trial court said nothing to suggest the court's own opinion regarding the credibility of the eyewitnesses' testimony. Moreover, the trial court's final instructions to the jury ensured a fair trial on this issue. The trial court instructed the jury as follows:

My comments, rulings, questions and instructions are also not evidence.

It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case.

However, when I make a comment, or give an instruction, I am not trying to influence your vote or express a personal opinion about the case.

If you believe I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

Because jurors are presumed to follow their instructions, the trial court's instruction ensured a fair trial and cuts against any finding of judicial bias in this case. *Stevens*, 498 Mich at 177, 190.

## C. RIGHT OF CONFRONTATION

Defendant argues in his supplemental brief filed before remand that his constitutional right of confrontation was violated when the trial court denied his request to recall Marquisha for further cross-examination about whether she made threats. We disagree.

To preserve a Confrontation Clause claim, a defendant must object at trial on this ground. *People v McPherson*, 263 Mich App 124, 137; 687 NW2d 370 (2004). Although defendant sought to recall Marquisha to cross-examine her about the police report indicating she had threatened Marsha, defendant did not object on the ground of the Confrontation Clause. Therefore, the Confrontation Clause issue is unpreserved.

"Whether defendant was denied his right of confrontation involves a question of constitutional law that we review de novo." *Henry*, 305 Mich App at 152. Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *Id.*, citing *Carines*, 460 Mich at 763. A trial court's decision whether to recall a witness is reviewed for an abuse of discretion. See *People v Williams*, 470 Mich 634, 643; 683 NW2d 597 (2004). An abuse of discretion occurs if the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009).

"The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him[.]' US Const, Am VI. The Michigan Constitution also affords a defendant this right of confrontation. Const 1963, art 1, § 20." *Henry*, 305 Mich App at 153 (citation omitted; alteration in original). "The right of confrontation includes the right to cross-examine witnesses." *Richardson v Marsh*, 481 US 200, 206; 107 S Ct 1702; 95 L Ed 2d 176 (1987). "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008) (quotation marks and citation omitted). "The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (quotation marks, alternation, and citations omitted).

-17-

The right of cross-examination is not without limits; a defendant does not have "an unlimited right to admit all relevant evidence or cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). A defendant is, however, "guaranteed a reasonable opportunity to test the truth of a witness' testimony." *Id*. "Limitations on cross-examination that prevent a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Gaines*, 306 Mich App 289, 316; 856 NW2d 222 (2014) (quotation marks, alteration, and citation omitted). "Cross-examination may be denied with respect to collateral matters bearing only on general credibility, as well as on irrelevant issues." *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992).

MRE 611(c) states, in relevant part: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." MRE 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Defendant was not denied his right of confrontation. His attorney, Nyenhuis, was afforded an opportunity to cross-examine Marquisha and in fact did so, including on the issue whether Marquisha had ever threatened anyone to make them lie. After a bench conference, the trial court itself asked Marquisha if she had ever told anyone to lie to the police, and she again denied having done so. Nyenhuis was then offered an opportunity for further cross-examination and impeachment of Marquisha, but Nyenhuis indicated he had no further questions. Defendant was thus afforded a reasonable opportunity to test the truth of Marquisha's testimony. The trial court's denial of defendant's request to recall Marquisha to testify again on the next day of trial fell within the range of principled outcomes. Although Nyenhuis apparently did not obtain the police log report concerning Marquisha's alleged threat until after she completed her testimony, the facts remain that Nyenhuis had already cross-examined Marquisha about whether she made threats and she denied having done so. Marquisha did not express that she lacked a recollection of whether she had made threats such that her memory needed to be refreshed by presenting the police log report to her. See MRE 612 (providing for the use of a writing or object to refresh a witness's memory). The trial court did not abuse its discretion in refusing to recall Marquisha.

Even if the trial court had erred in refusing to recall Marquisha, the error would not require reversal. Given her categorical denial of having made threats, there is no indication that presenting the police report to her would have altered her testimony; again, she did not state that she lacked a memory of having made threats such that her recollection needed to be refreshed. Further, even if it could have somehow been established that Marquisha had threatened Marsha, defendant has not shown that evidence of Marquisha's threat in an unrelated case more than a month before the crimes in this case were committed would have been reasonably likely to produce a different outcome in the present case. The alleged threat against Marsha was to

protect Marquisha's husband, Jermaine King. This motivation to protect her husband in another case would not provide a reason for Marquisha to falsely accuse defendant in this case or to urge other witnesses to do so. There is no evidence that Marquisha had a motive to falsely accuse defendant. Defendant has therefore failed to demonstrate an outcome-determinative plain error.

## D. JUDICIAL FACT-FINDING AT SENTENCING

Defendant argues in his supplemental appellate brief filed after remand that his Sixth and Fourteenth Amendment rights were violated by judicial fact-finding in the scoring of Offense Variables (OVs) 6 and 13. We disagree.

To preserve an argument that a Sixth Amendment violation occurred due to judicial fact-finding in the scoring of OVs, a defendant must raise an objection on that ground at sentencing or in a motion for resentencing or a motion to remand. See *People v Steanhouse*, 313 Mich App 1, 42; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016); *People v Terrell*, 312 Mich App 450, 464; 879 NW2d 294 (2015), held in abeyance 878 NW2d 480 (2016). At sentencing, defendant objected to the assessment of 25 points for OV 13 but agreed with the assessment of 25 points for OV 6. Thus, he waived any review of the assessment of 25 points for OV 6. And, defendant did not object to the scoring of either OV on the basis of unconstitutional judicial fact-finding. On appeal, defendant filed a motion to remand but did not raise the *Alleyne*[8] issue in that motion. This Court granted the motion to remand and directed that the proceedings on remand were to be limited to the issues raised in the motion to remand. *People v Howard*, unpublished order of the Court of Appeals, entered May 28, 2015 (Docket No. 320695). On remand, defendant filed a motion for resentencing raising the present issue under *Alleyne* and *Lockridge*.[9] The trial court denied the motion for resentencing without explaining its reasoning.

"When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Russell*, 297 Mich App at 714. If a party on remand raises issues that exceed the scope of the remand order, the lower court cannot consider those issues. *People v McChester*, 310 Mich App 354, 360 n 2; 873 NW2d 646 (2015). Here, this Court limited the proceedings on remand to the issues raised in defendant's motion to remand, which did not include the *Alleyne* issue. Defendant's motion for resentencing on remand raising the *Alleyne* issue thus exceeded the scope of this Court's remand order. And, because defendant did not otherwise raise the *Alleyne* issue at sentencing or in a properly filed motion for resentencing or motion to remand, the issue is unpreserved.[10]

---

[8] *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

[9] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

[10] Further, defendant has not properly raised this issue on appeal. This Court's order granted defendant permission to file a supplemental appellate brief after remand "pertaining to the issues raised on remand . . . ." *People v Howard*, unpublished order of the Court of Appeals, entered May 28, 2015 (Docket No. 320695). As discussed, this Court limited the issues on remand to those issues raised in defendant's motion to remand, which did not include the present issue.

This issue may also be deemed waived because defendant has failed to provide this Court with a copy of the presentence investigation report. See MCR 7.212(C)(7) ("If an argument is presented concerning the sentence imposed in a criminal case, the appellant's attorney must send a copy of the presentence report to the court at the time the brief is filed[.]"); *People v Rodriguez*, 212 Mich App 351, 355; 538 NW2d 42 (1995) (failure to provide this Court with a copy of the presentence investigation report constitutes waiver of a sentencing issue); *People v Oswald*, 208 Mich App 444, 446; 528 NW2d 782 (1995) (same). Further, Defendant argues that the assessment of 25 points each for OV 6 and OV 13 required the trial court to find facts beyond those established by the jury verdict. However, defendant fails to present any argument in support of this assertion. That is, defendant does not explain how he has reached the conclusion that the assessment of 25 points each for OV 6 and OV 13 required judicial fact-finding. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *McPherson*, 263 Mich App at 136. Because defendant has waived review of this unpreserved issue, we decline to address it.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

Defendant thus lacked authority to raise this issue on remand, and he likewise lacked authority to raise the issue in his supplemental appellate brief filed after remand. We will nonetheless address the issue.